UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

X.J.R.,                                )
                                       )
          Plaintiff,         )
                                       )
      v.                       )  Civil Action No. 13-30129-KPN
                                       )
CAROLYN W. COLVIN,                     )
Acting Commissioner of Social          )
Security Administration,               )
                                       )
          Defendant          )


MEMORANDUM AND ORDER REGARDING PLAINTIFF'S
MOTION FOR JUDGMENT ON THE PLEADINGS AND DEFENDANT'S
MOTION TO AFFIRM THE COMMISSIONER'S DECISION
(Document Nos. 10 and 18)
September 30, 2014

NEIMAN, U.S.M.J.

This is an action for judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") regarding a child's entitlement to Supplemental Security Income ("SSI") pursuant to 42 U.S.C. § 1383(c)(3) (referencing 42 U.S.C. § 405(g)). X.J.R. ("Plaintiff"), a minor, asserts that the Commissioner's decision denying him such disability benefits – memorialized in a May 25, 2012 decision of an administrative law judge ("ALJ") – is in error. He has filed a motion for judgment on the pleadings seeking to remand the matter and the Commissioner, in turn, has moved to affirm.

The parties have consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. For the reasons that follow, the court will allow Plaintiff's motion and deny the Commissioner's motion to affirm.

I. D<small>ISCUSSION</small>

A. Childhood Disability Standard and the ALJ's Decision

The parties themselves are well aware of the factual and procedural history of this case, the standard of review, and the applicable three-step sequential analysis pertaining to claims for children. *See* 20 C.F.R. § 416.924. Nonetheless, the court will briefly review both the childhood disability standard and the ALJ's decision.

The Personal Responsibility and Work Opportunity Reconciliation Act of 1996, as codified, provides as follows:

> An individual under the age of 18 shall be considered disabled . . . if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i). The Commissioner, in turn, has established a three-step protocol for determining whether such an individual is disabled. *See Belivau v. Apfel*, 154 F.Supp. 2d 89, 93 (D. Mass. 2001) (citing 20 C.F.R. § 416.924). First, the Commissioner must determine whether the child is engaging in "substantial gainful activity." *Id.* (citing 20 C.F.R. § 416.924(b)). If not, the Commissioner must next determine whether the child has an impairment (or a combination of impairments) that is "severe." *See ia.* (citing 20 C.F.R. § 416.924(c)). Third, the Commissioner must determine whether the impairment meets, medically equals, or functionally equals an impairment in the "Listing of Impairments" from Appendix 1 of Subpart P of the Commissioner's regulations. *See id.* If the child's impairment does not meet, medically equal, or functionally equal a "listed" impairment, the child will be deemed "not

disabled." *Id.* (citing 20 C.F.R. § 416.924(d)).

"Functional equivalency" may be measured in a number of ways, most specifically in "domains" such as (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well-being. *See id.*; 20 C.F.R. § 416.926a(b)(1). To qualify as functionally equivalent to a listing, the child's impairment "must result in [either] 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a(a). A child has a "marked" limitation, *i.e.*, one "that is 'more than moderate' but 'less than extreme,'" when the impairment "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). The child has an "extreme" limitation, *i.e.*, "the rating [the Commissioner] gives to the worst limitations," when the impairment "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(3)(i).

In the instant case, the ALJ found that Plaintiff had not engaged in any "substantial gainful activity" since the date of his application. The ALJ then found at step two that Plaintiff had certain "severe" impairments -- "attention-deficit disorder, depressive disorder (not otherwise specified), anxiety-related disorder (not otherwise specified), psychotic disorder (not otherwise specified), and non-dominant left hand weakness and other residual effects from right-sided stroke" -- but determined at the beginning of step three that these impairments did not meet or medically equal a listed impairment. With regard to "functional equivalency," the remainder of step three, the ALJ found that Plaintiff had no impairment or combination of impairments functionally

3

equaling the severity of the listings. Absent "marked" limitations in two domains or "extreme" limitations in one domain, the ALJ concluded that Plaintiff was not disabled.

B. Plaintiff's Challenge to the ALJ's Decision

Plaintiff raises two arguments challenging the ALJ's decision, both of which focus on the ALJ's functional equivalency determinations. First, Plaintiff asserts that the ALJ's conclusion that he suffers a "less than marked" limitation in the domain of "attending and completing tasks" was not supported by substantial evidence. Second and similarly, Plaintiff contends that the ALJ's conclusion that he suffers a "less than marked limitation" in the domain of "interacting and relating to others" was not supported by substantial evidence. Although the Commissioner argues to the contrary, Plaintiff, in the court's view, has the better argument over all.

Before addressing the dispute, however, the court makes note of two matters. First, as both parties recognize and the record reveals, Plaintiff previously received childhood disability benefits as of April 23, 2002, but those benefits ceased at the end of April of 2009 because his mother returned to work. Sometime thereafter, Plaintiff's father was awarded sole custody of Plaintiff. On May 11, 2010, Plaintiff's father filed an application for benefits on Plaintiff's behalf, which application was denied. In her decision affirming the denial, the ALJ concluded that Plaintiff had not been disabled since May 11, 2010.

Second, it bears repeating that, to prove "functional equivalency," a claimant must demonstrate that he had either a "marked" limitation in two domains or an "extreme" limitation in one domain. *See* 20 C.F.R. § 416.926(b). Here, Plaintiff has focused on the two domain alternative. Accordingly, to succeed before this court,

4

Plaintiff must show that the ALJ had insubstantial evidence to conclude that he suffered a less than "marked" limitation in *both* the domain of attending and completing tasks *and* interacting and relating with others.

The governing regulations define "marked" limitation as follows:

(i) We will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

20 C.F.R. § 416.926a(e)(2)(i).

*1. Attending and Completing Tasks*

First, Plaintiff argues that the ALJ appeared to base her conclusion -- that he suffered a less than "marked" limitation in attending and completing tasks -- on a speculative weighing of the available evidence. Plaintiff also submits that the reasoning advanced by the ALJ in support of her finding is inconsistent with the evidence of record. In this vein, Plaintiff maintains that the ALJ's reasoning reflects a purposeful attempt to dissect the treatment records in order to find what the ALJ perceived to be inconsistencies, thereby ignoring substantial medical evidence to the contrary. For her part, the Commissioner maintains that substantial evidence in the record supports the ALJ's findings in this domain.

As to "attending and completing tasks," the regulation provides that, "[i]n this domain, we consider how well you are able to focus and maintain your attention, and how well you begin, carry through, and finish your activities, including the pace at which

5

you perform activities and the ease with which you change them." 20 C.F.R. § 416.926a(h). The regulation goes on to describe the meaning of "attention," as follows:

> (i) Attention involves regulating your levels of alertness and initiating and maintaining concentration. It involves the ability to filter out distractions and to remain focused on an activity or task at a consistent level of performance. This means focusing long enough to initiate and complete an activity or task, and changing focus once it is completed. It also means that if you lose or change your focus in the middle of a task, you are able to return to the task without other people having to remind you frequently to finish it.

20 C.F.R. § 416.926a(h)(1)(i). The regulation further provides:

> (ii) Adequate attention is needed to maintain physical and mental effort and concentration on an activity or task. Adequate attention permits you to think and reflect before starting or deciding to stop an activity. In other words, you are able to look ahead and predict the possible outcomes of your actions before you act. Focusing your attention allows you to attempt tasks at an appropriate pace. It also helps you determine the time needed to finish a task within an appropriate timeframe.

20 C.F.R. § 416.926a(h)(1)(ii). In regard to adolescents ages twelve to eighteen, the regulation states the following:

> In your later years of school, you should be able to pay attention to increasingly longer presentations and discussions, maintain your concentration while reading textbooks, and independently plan and complete long-range academic projects. You should also be able to organize your materials and to plan your time in order to complete school tasks and assignments. In anticipation of entering the workplace, you should be able to maintain your attention on a task for extended periods of time, and not be unduly distracted by your peers or unduly distracting to them in a school or work setting.

20 C.F.R. § 416.926a(h)(2)(v).

With respect to the domain at issue, the ALJ found that, "[]n light of [Plaintiff's] special education modifications to his regular education classes and the effects of the claimant's severe impairments, including residual effects from a stroke in 2001, I find

that [Plaintiff's] impairments have caused him less than marked limitation in attending and completing tasks." (Administrative Record ("A.R.") 21.) In support, the ALJ cited the following evidence:

> Despite the "black out" episodes from [Plaintiff's] post-traumatic stress disorder and diagnostically-assessed moderate symptoms or moderate difficulty in social and school functioning secondary to his other related severe mental impairments, [Plaintiff] has been able to maintain good attendance in his classes and become "excited and busy using his new DJ equipment to perform at house parties for friends." (Exhibits 9F, page 4; 16F, page 5.)

(Id.)

It is not at all clear to the court how the ALJ could come to this conclusion, particularly in light of two significant pieces of countervailing evidence. First, the record includes a January 6, 2011 speech and language evaluation by Claire Sibilia, a school psychologist, which notes that Plaintiff's teachers reported that he has good attendance and attempts to complete his homework but that he has continued problems with organization, attention, and focusing in this classes. (A.R. 474.) Ms. Sibilia observed Plaintiff during her examination to be "fidgety" and to "process verbal information slowly [as] directions were repeated and clarified." (A.R. 475.) Ms. Sibilia also noted that Plaintiff's report card revealed grades ranging from Ds to Fs in all of his subjects, and, while she noted that Plaintiff's teachers mentioned his good attendance, "he is disorganized and has trouble focusing." (Id.) She further found that, "according to prior testing and current testing[,] [Plaintiff's] overall cognitive abilities are functioning within the Borderline range [and his] working memory is problematic measuring in the Extreme Low range," and concluded that he "continues to be challenged with executive functioning demonstrating problems with organization, attention, focusing, and

7

concentration." (A.R. 476.)

The second piece of significant evidence was Plaintiff's Individualized Education Plan ("IEP"), which covered the period of February 15, 2012, through February 14, 2013. The IEP indicates that Plaintiff qualified for student support services and noted that he has "a hard time with recall and analytical thinking," "problems with working memory[,] needs help to retain the information," and "often needs to be reminded to stay on task." (A.R. 274.)

Both pieces of evidence run counter to the ALJ's conclusion. Granted, the ALJ stated in her decision that she gave "considerable weight to the evaluation team reports and psychological assessments by the [Plaintiff's] school psychologist Claire Sibilia" and indicated that she gave such weight "to the extent that [she] describe[d] in [her] following findings." Ms. Sibilia's evaluation, however, is not mentioned in the ALJ's findings with respect to this domain. That leaves the court unsure as to how to treat, let alone credit, the ALJ's conclusion. *See Oberg v. Astrue*, 2012 WL 689339, at *6 (D. Mass. March 1, 2012) ("Because the ALJ has failed 'to provide the reviewing court with the sufficient basis to determine that the [ALJ] applied the correct legal standards,' the case must be remanded.") (quoting *Weiler v. Shalala*, 922 F.Supp. 689, 694 (D. Mass. 1996)). To be sure, the "failure to address a specific piece of evidence does not [necessarily] undermine the validity of the ALJ's conclusion, for example, when that conclusion was supported by citations to substantial medical evidence in the record and the unaddressed evidence was either cumulative of the evidence discussed . . . or otherwise failed to support the claimant's position." *Kiklis v. Astrue*, 2011 WL 4768491, *7 (D. Mass. Sept. 28, 2011). That, however, is not the case here. Instead, there was

8

no adequate explanation as to why Ms. Sibilia's report was disregarded.

The court also finds that the evidence upon which the ALJ apparently relied was irrelevant to the issue at hand. In short, Plaintiff's good attendance and the eagerness and ability to use DJ equipment do not appear to bear on Plaintiff's ability to attend and complete tasks, particularly his ability to avoid impulsive thinking, prioritize competing tasks, and manage his time. *See* Social Security Ruling ("SSR") 09-4p: Title XVI: Determining Childhood Disability-The Functional Equivalence Domain of "Attending and Completing Tasks" (Feb. 18, 2009). Lacking such an explanation, the court is unable to meaningfully review the ALJ's decision. *Compare Snow v. Astrue*, 2011 WL 4828656, at *3-5 (D.N.H. Oct. 12, 2011) (despite statement that administrative law judge gave "great weight" to medical opinion, he failed to explain his treatment of portions of the opinion that contradicted his conclusion), *with King v. Astrue*, 2010 WL 445447, at *4 (D. Me. Mar. 29, 2011) ("The administrative law judge fulfilled applicable requirements with respect to the [opinion of a nurse practitioner], expressly considering it, explaining the weight afforded to it, and providing adequate discussion to enable a subsequent review follow his reason. In particular, he noted that he declined to afford it weight because it was (I) contradicted by the plaintiff's own testimony, (ii) not supported by contemporaneous medical record, and (iii) rendered by an individual who was not an 'acceptable medical source' and thus not entitled to controlling weight."). *See also McCollom v. Astrue*, 2012 WL 2244798, at *5 (D. Mass. June 14, 2012) ("vague allusions to the record as a whole . . do not permit meaningful review" when an administrative law judge resolves "evidentiary conflicts").

The court, of course, may not disturb the Commissioner's decision if it is

grounded in substantial evidence, see 42 U.S.C. §§ 405(g) and 1383(c)(3), that is, such relevant evidence as a reasonable mind accepts as adequate to support a conclusion. *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981). An administrative law judge's findings of fact, however, "are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999). Thus, an administrative law judge must "consider all relevant information" in the record, including information from medical sources, such as a "pediatrician, other physician, psychologist or qualified speech-language pathologists; other medical sources not listed in [20 C.F.R. § 416.913(a)], such as physical, occupational, and rehabilitation therapists; and nonmedical sources, such as the [child's] parents, teachers, and other people who know [the child]." 20 C.F.R. § 416.924a(a). Here, unfortunately, the ALJ's findings with respect to the domain of "attending and completing tasks" were derived by impermissibly ignoring evidence. *See Nguyen*, 172 F.2d at 35; *see also Harrison v. Astrue,* 2009 WL 2044688, at *7 (M.D. FL. Jul. 10, 2009) ("The ALJ may not, however, selectively rely on only a limited part of the record, while ignoring other parts.") (citing *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986)).

    *2. Interacting and Relating With Others*

Plaintiff's second argument echoes his first, namely, that the ALJ's finding that he suffered a "less than marked" limitation in the domain of "interacting and relating with others" was not based on substantial evidence. Again, the court finds Plaintiff's argument persuasive.

The regulation concerning the domain of "interacting and relating with others"

provides that "we [will] consider how well you initiate and sustain emotional connections with others, develop and use the language of your community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others."  20 C.F.R. § 416.926a(i).  The regulation goes on to define "interacting," in part, as "initiating and responding to exchanges with other people, for practical or social purposes[, . . . ] by using facial expressions, gestures, actions, or words."  20 C.F.R. § 416.926a(i)(1)(I).  "Relating to other people," in turn, is defined in part as "forming relationships with family members and with friends who are your age, and sustaining them over time."  20 C.F.R. § 416.926a(i)(1)(ii).

The regulations further provide that "(i)nteracting and relating require you to respond appropriately to a variety of emotional and behavioral cues."  20 C.F.R. § 416.926a(i)(1)(iii).  A child "must be able to speak intelligibly and fluently so that others can understand you; participate in verbal turntaking and nonverbal exchanges; consider others' feelings and points of view; follow social rules for interaction and conversation; and respond to others appropriately and meaningfully."  *Id.*  Relevant activities at the child's home or school or within the child's community "may involve playing, learning, and working cooperatively with other children, one-at-a-time or in groups; joining voluntarily in activities with the other children in your school or community; and responding to persons in authority (e.g., your parent, teacher, bus driver, coach, or employer)."  20 C.F.R. § 416.926a(i)(1)(iv).  And, as to children ages twelve through eighteen, the regulation states they should, among other things, be able to "initiate and develop friendships with children who are [their] age . . . , both individually and in groups," "intelligibly express [their] feelings, ask for assistance in getting your needs

11

met, seek information, describe events, and tell stories, in all kinds of environments."

20 C.F.R. § 416.926a(i)(1)(v).

Here, in support of her conclusion that Plaintiff had a "less than marked" limitation in this domain, the ALJ found as follows:

> In addition to my previous findings, I find that the effects from the claimant's post-traumatic stress disorder and other severe impairments have improved with his compliance with Dr. Thunfors's treatment. For instance, the claimant has changed his focus from negative thoughts to more hopeful and beneficial preoccupations, such as, his conscious efforts to develop his music skills at house parties. (Exhibit 16F).
>
> The record also indicates that he has received speech language therapy for a residual stutter that he developed after his stroke in 2002. (Exhibit 1F; 5F, page 1). The claimant's school and medical records indicate that this "slight" stutter has not adversely affected his ability to engage in communication with others. (Exhibits 16E; 5F, page 1; 9F; 16F.) For instance, although he is doing poorly, the claimant has expressed interest in learning German for his language requirement, which requires him to use different linguistic parts of speech than English. (Exhibit 9F.)

(A.R. 22.) Admittedly, the ALJ did refer to the record more frequently than she had when discussing the domain of "attending and completing tasks." Still, for reasons similar to those discussed above, the ALJ's reasoning is untethered to the domain at issue and ignores other significant evidence.

By way of example, the ALJ opined that Plaintiff's post-traumatic stress disorder and other severe impairments have improved with treatment by Dr. Thunfors and suggested that Plaintiff now has "more hopeful and beneficial preoccupations, such as, his conscious efforts to develop his music skills at house parties." (Id.) The ALJ, however, failed to connect these opinions to aspects of the domain at issue, such as the formation and development of relationships with family and friends and the use of

12

various forms of communication, including words, expressions, and gestures. Accordingly, the court is left wondering how Plaintiff's "conscious efforts to develop his music skills at house parties," as the ALJ put it, inform such indicia of interacting and relating with others. Simply put, the ALJ did not sufficiently explain the inferences she apparently drew. *See Harrison*, 2009 WL 2044688, at *7 ("Although the ALJ has wide latitude to evaluate the weight of the evidence, he must do so in accordance with prevailing precedent. [Here,] it appears the ALJ disregarded a significant portion of the medical record evidence without stating any reason and the Court is left to wonder if correct legal standards were applied in his analysis of the evidence.").

Second, the ALJ's statement that Plaintiff "changed his focus from negative thoughts to more hopeful and beneficial preoccupations" does not appear rooted in Dr. Thunfors' notes. Dr. Thunfors did report on January 13, 2012, that, among other things, "[Plaintiff] has been excited and busy using his new DJ equipment, performing at house parties for friends." (A.R. 519.) It is not clear, however, how this notation gives rise to the broad conclusion that Plaintiff has "changed his focus from negative thoughts to more hopeful and beneficial preoccupations." In this regard , it is important to understand that the reference to Plaintiff's use of new DJ equipment was contained in one sentence of an evidentiary record comprised of over five hundred pages. While this activity might possibly hold some weight, it is mentioned in the midst of substantial medical records that paint a different picture. If anything, the ALJ's decision "is silent on [a] large amount of medical evidence provided by the Plaintiff." *Harrison*, 2009 WL 2044688, at *7. Consequently, it remains unclear to the court what other evidence the ALJ actually discredited or unduly ignored. *See id.*

13

Three final points: First, Plaintiff's "interest" in learning to speak German, also cited by the ALJ, does not address interacting and relating with other people, as described and defined in the regulations. *See* 20 C.F.R. § 416.926a(I); SSR 09-5p: Title XVI: Determining Childhood Disability-The Functional Equivalence Domain of "Interacting and Relating with Others" (Feb. 17, 2009). Such an "interest" does not in and of itself demonstrate or reveal any communication or relationship skills; indeed, the record reveals that, although Plaintiff was taking a German class, he was failing. (A.R. 475.) Second, although the ALJ discusses Plaintiff's speech language therapy for a stutter, which would be relevant to this domain, her conclusion that Plaintiff is not adversely affected by the stutter does not alone, in light of the record, support the ALJ's finding of a "less than marked" limitation in this domain. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (defining substantial evidence as "more than a mere scintilla").

Third, the court acknowledges the Commissioner's attempt via her brief to remedy the lacunae in the ALJ's decision, by citing other aspects of the record which might support the ALJ's findings and, as well, by identifying some inconsistencies therein. The court, however, is reluctant to affirm the ALJ's decision on grounds different than those which she herself advanced. *See Parker v. Asture*, 597 F.3d 920, 922 (7th Cir. 2010) (holding that the agency's lawyer may not defend the agency's decision on grounds the agency did not employ). In short, the court sees no reason to accept the *post hoc* rationale now offered by the Commissioner. *See Seavey v. Barnahrt*, 276 F.3d 1, 12 (1st Cir. 2001) ("When an agency has not considered all relevant factors in taking action, or has provided insufficient explanation for its action,

14

the reviewing court ordinarily should remand the case to the agency."). Accordingly, the court shall remand this matter for a new hearing.

That said, the court wishes to make clear that its remand ought not be interpreted as an endorsement of Plaintiff's eligibility for benefits. Rather, the remand, for all the reasons discussed, is based on the insufficiency of the ALJ's analysis.

## II. CONCLUSION

For the reasons stated, the Commissioner's motion to affirm is DENIED and Plaintiff's motion for judgment on the pleadings, to the extent it can fairly be read to request a remand, is ALLOWED.

SO ORDERED.

September 30, 2014

      /s/   Kenneth P. Neiman
KENNETH P. NEIMAN
U.S. Magistrate Judge